UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

COOK LOGISTICS, LLC,
a Wisconsin limited liability company,
individually and as assignee of HITEC
POWER PROTECTION, INC.,

        Plaintiff,

        Case No. 2019-CV-1620

    v.

EQUIPMENT EXPRESS, INC.
a Canadian corporation,

        Defendant.

---

## AFFIDAVIT OF PATRICIA STONE

---

STATE OF WISCONSIN    )
                    ) ss.
MILWAUKEE COUNTY    )

I, Patricia Stone, being duly sworn under oath, deposes and states as follows:

1.    That I am representing Equipment Express, Inc. in this action and make this affidavit based upon my personal knowledge.

2.    That attached hereto as Exhibit 1 is a true and correct copy of the Carriage of Goods Regulations, O Reg 643/05 (Can.).

3.    That attached hereto as Exhibit 2 is a true and correct copy of *A & A Trading Ltd. v. DIL'S Trucking Inc.*, 2015 ONSC 1887 (Can. Ont. S.C.), 2015 CarswellOnt 4007.

4.    That attached hereto as Exhibit 3 is a true and correct copy of Mobile Shrink Wrap, Ltd.'s webpage accessed on February 14, 2020.

5.     That attached hereto as Exhibit 4 is a true and correct copy of HITEC Power

Protection's webpage accessed on February 14, 2020.

Dated this ___ day of February, 2020.

_____
Patricia A. Stone

Signed and sworn to before me on
this __14ᵀᴴ__ day of February, 2020

_____
Notary Public
My commission expires: 07.08.23

2

# EXHIBIT 1



**Highway Traffic Act**
**Code de la route**

**ONTARIO REGULATION 643/05**

**CARRIAGE OF GOODS**

**Consolidation Period:** From January 1, 2006 to the e-Laws currency date.

No amendments.

*This Regulation is made in English only.*

**CONTENTS 〔−〕**

| | |
|---|---|
| 1. | Definitions |
| 2. | Goods not covered by this Regulation |
| 3. | Liability insurance held by carriers |
| 4. | Information required in contract of carriage — general freight |
| 5. | Information required in contract of carriage — livestock or animal specialties |
| 6. | Information required in contract of carriage — household goods |
| Schedule 1 | Uniform conditions of carriage — general freight |
| Schedule 2 | Uniform conditions of carriage — livestock and animal specialties |
| Schedule 3 | Uniform conditions of carriage — household goods |

**Definitions**
**1.** In this Regulation,

"household goods" means,

(a) furniture, appliances and personal effects transported as part of the relocation of a household, and includes vehicles and boats moved as part of a household,

(b) uncrated furniture and equipment transported to, and to be furnishings in, an office, store, factory, commercial establishment, museum, hospital or public institution,

(c) stock-in-trade moved as part of the relocation of an office, store or commercial establishment, and

(d) objects of art, displays, exhibits, computers and electronic devices that require specialized handling;

"public truck" means a commercial motor vehicle or the combination of a commercial motor vehicle and trailer or trailers drawn by it, operated by a person to carry the goods of another person for compensation. O. Reg. 643/05, s. 1.

**Goods not covered by this Regulation**
**2.** This Regulation does not apply to the carriage of the following goods:

1. Goods that are carried solely within a local municipality, excluding a municipality that had the status of a township on December 31, 2002 and, but for the enactment of the *Municipal Act, 2001*, would have had the status of a township on January 1, 2003.

Case 2:19-cv-01620-PP   Filed 02/14/20   Page 4 of 30   Document 6-1

2. Fresh fruit and fresh vegetables grown in continental United States of America or Mexico.

3. Goods used on farms that are carried in a commercial motor vehicle equipped with not more than three axles and that does not draw a trailer.

4. Field crops, fresh fruits, fresh tree nuts, fresh vegetables, horticultural specialities, livestock and animal specialities that are carried in a commercial motor vehicle equipped with not more than three axles and that does not draw a trailer.

5. Skim milk, cream or fresh, unprocessed bulk fluid milk carried on behalf of The Ontario Milk Marketing Board.

6. Milk carried by a co-operative corporation to which the *Co-operative Corporations Act* applies, of which one of the objects is to engage in the transportation of milk and of which more than three-quarters of the shareholders or members are producers supplying milk to one or more plants.

7. Wheat that is carried by a person appointed to act as agent for the Ontario Wheat Producers' Marketing Board from the agent's premises in a commercial vehicle registered in the agent's name.

8. Ready mixed concrete.

9. Primary forest or raw wood materials that are the products of the forest from which they are being carried.

10. Goods carried by an operator of a commercial vehicle if the goods have been sold, bought, produced, transformed or repaired by, or lent, borrowed, given or leased by, the operator as an integral part of the operator's primary business, which business is not the operation of public trucks.

11. Goods in a bus being operated under the authority of an operating licence issued under the *Public Vehicles Act*.

12. Goods carried by the Ontario Northland Transportation Commission. O. Reg. 643/05, s. 2.

**Liability insurance held by carriers**
**3.** (1) For each motor vehicle operated by a carrier for the carriage of goods for compensation, the carrier shall provide or effect and carry with an insurer licensed under the *Insurance Act* liability insurance for loss or damage to goods in an amount sufficient to cover the loss or damage of the goods carried. O. Reg. 643/05, s. 3 (1).

(2) Subsection (1) does not apply where the cargo is road-construction materials, iron, steel, coal, rough lumber or miscellaneous waste or scrap or materials of an indestructible or non-flammable nature. O. Reg. 643/05, s. 3 (2).

**Information required in contract of carriage — general freight**
**4.** (1) A contract of carriage must contain,

(a) the name of the consignor;

(b) the name and address of the consignee;

(c) the originating point of the shipment;

(d) the destination of the shipment;

(e) the date of the shipment;

(f) the name of the originating carrier;

(g) the names of connecting carriers, if any;

(h) the particulars of the goods comprising the shipment;

(i) a space to show the declared valuation of the shipment, if any;

(j) information as to whether the charges are prepaid or collect;

(k) a space to show whether the C.O.D. fee is prepaid or collect;

(l) a space to show the amount to be collected by the carrier on a C.O.D. shipment;

(m) a space to note any special agreement between the consignor and carrier;

(n) a statement to indicate that the uniform conditions of carriage apply;

(o) an acknowledgment of receipt of the goods by the carrier or the intermediary indicating whether the goods were received in apparent good order and condition;

(p) an undertaking by the carrier or the intermediary to carry the goods for delivery to the consignee or the person entitled to receive the goods;

(q) the signed acceptance by or on behalf of the originating carrier or intermediary and the consignor of the conditions contained, or deemed to be contained, in the contract of carriage;

(r) a statement of the notice of claim requirements in the uniform conditions of carriage; and

(s) if applicable, a statement, in conspicuous form, that the carrier's liability is limited by a term or condition of another agreement. O. Reg. 643/05, s. 4 (1).

(2) The uniform conditions of carriage in Schedule 1 are deemed to be terms and conditions of every contract of carriage to which this section applies. O. Reg. 643/05, s. 4 (2).

(3) This section does not apply to a contract of carriage for,

(a) livestock;

(b) animal specialties;

(c) household goods;

(d) road construction materials, garbage, waste or scrap, sod, coal or lumber (rough or dressed); or

(e) a parcel, wrapped or unwrapped, that does not weigh more than 45 kilograms. O. Reg. 643/05, s. 4 (3).

**Information required in contract of carriage — livestock or animal specialties**

**5.** (1) A contract of carriage for the carriage of livestock or animal specialties must contain,

(a) the name of the consignor;

(b) the name and address of the consignee;

(c) the originating point of the shipment;

(d) the destination of the shipment;

(e) the date of the shipment;

(f) the name of the originating carrier;

(g) the names of connecting carriers, if any;

(h) the particulars of the goods comprising the shipment;

(i) the gross weight of the shipment;

(j) a space to show the declared valuation of the shipment, if any;

(k) information as to whether the charges are prepaid or collect;

(l) a space to show the amount to be collected by the carrier on a C.O.D. shipment;

(m) if applicable, a statement, in conspicuous form, that the carrier's liability is limited by a term or condition of another agreement; and

(n) if applicable, the words "at owner's risk". O. Reg. 643/05, s. 5 (1).

(2) The uniform conditions of carriage in Schedule 2 are deemed to be terms and conditions of every contract of carriage to which this section applies. O. Reg. 643/05, s. 5 (2).

**Information required in contract of carriage — household goods**

**6.** (1) A contract of carriage for the carriage of household goods must contain,

(a) the name and address of the consignor;

(b) the name, address and telephone number of the consignee;

(c) the originating point of the shipment;

(d) the destination of the shipment;

(e) the date of the shipment;

(f) in a conspicuous place, the name and telephone number of the originating carrier;

(g) in a conspicuous place, the name and telephone number of the destination agent;

(h) the names of connecting carriers, if any;

(i) the inventory of the goods comprising the shipment;

(j) a statement as to whether the goods were received by the carrier in apparent good order and condition, except as noted on the inventory;

(k) a space to show the declared valuation of the shipment;

(l) a space to show the amount of freight and all other charges to be collected by the carrier;

(m) a space to show the date or time period agreed upon for delivery;

(n) a space to note any special services or agreements between consignor and the originating carrier;

(o) a statement to indicate that the uniform conditions of carriage apply;

(p) if applicable, a statement, in conspicuous form, that the carrier's liability is limited by a term or condition of the contract of carriage; and

(q) a statement in conspicuous form that the signature of the consignee for the receipt of goods does not preclude future claim for loss or damage made within the time limits prescribed by the uniform conditions of carriage. O. Reg. 643/05, s. 6 (1).

(2) The uniform conditions of carriage in Schedule 3 are deemed to be terms and conditions of every contract of carriage to which this section applies. O. Reg. 643/05, s. 6 (2).

**7.** Omitted (provides for coming into force of provisions of this Regulation). O. Reg. 643/05, s. 7.

SCHEDULE 1
UNIFORM CONDITIONS OF CARRIAGE — GENERAL FREIGHT

1. Liability of Carrier

The carrier of the goods described in this contract is liable for any loss of or damage to goods accepted by the carrier or the carrier's agent except as provided in this Schedule.

2. Liability of Originating and Delivering Carriers

Where a shipment is accepted for carriage by more than one carrier, the originating carrier and the carrier who assumes responsibility for delivery to the consignee (called the delivering carrier in this Schedule), in addition to any other liability under this Schedule, are liable for any loss of or damage to the goods while they are in the custody of any other carrier to whom the goods are delivered and from which liability the other carrier is not relieved.

3. Recovery from Connecting Carriers

i. The originating carrier or the delivering carrier, as the case may be, is entitled to recover from any other carrier to whom the goods are delivered the amount that the originating carrier or delivering carrier, as the case may be, is required to pay for the loss of or damage to the goods while they were in the custody of such other carrier.

ii. If there is a concealed damage settlement and the goods were interlined between carriers so that it is not clear as to who had custody of the goods when they were damaged, the originating carrier or delivering carrier, as the case may be, is entitled to recover from each of the connecting carriers an amount prorated on the basis of each carrier's revenue for carriage of the damaged goods.

4. Remedy by Consignor or Consignee

Nothing in Article 2 or 3 deprives a consignor or consignee of any rights the consignor or consignee may have against any carrier.

5. Exceptions from Liability

The carrier shall not be liable for loss, damage or delay to any of the goods described in the contract of carriage caused by an act of God, the Queen's or public enemies, riots, strikes, a defect or inherent vice in the goods, an act or default of the consignor, owner or consignee, authority of law, quarantine or difference in weights of grain, seed or other commodities caused by natural shrinkage.

6. Delay

No carrier is bound to carry goods by any particular public truck or in time for any particular market or otherwise than with due dispatch, unless by agreement that is specifically endorsed in the contract of carriage and signed by the parties.

7. Routing by Carrier

If the carrier forwards the goods by a conveyance that is not a public truck, the liability of the carrier is the same as though the entire carriage were by public truck.

8. Stoppage in Transit

If goods are stopped and held in transit at the request of the party entitled to so request, the goods are held at the risk of that party.

9. Valuation

Subject to Article 10, the amount of any loss or damage for which the carrier is liable, whether or not the loss or damage results from negligence, shall be the lesser of,

i. the value of the goods at the place and time of shipment, including the freight and other charges if paid, and

ii. $4.41 per kilogram computed on the total weight of the shipment.

10. Declared Value

If the consignor has declared a value of the goods on the face of the contract of carriage, the amount of any loss or damage for which the carrier is liable shall not exceed the declared value.

11. Consignor's Risk

i. If it is agreed that the goods are carried at the risk of the consignor, that agreement covers only such risks as are necessarily incidental to the carriage and the agreement does not relieve the carrier from liability for any loss or damage or delay that results from the negligence of the carrier or the carrier's agents or employees.

ii. The burden of proving absence of negligence shall be on the carrier.

12. Notice of Claim

i. No carrier is liable for loss, damage or delay to any goods carried under the contract of carriage unless notice of the loss, damage or delay setting out particulars of the origin, destination and date of shipment of the goods and the estimated amount claimed in respect of such loss, damage or delay is given in writing to the originating carrier or the delivering carrier within 60 days after delivery of the goods or, in the case of failure to make delivery, within nine months after the date of shipment.

ii. The final statement of the claim must be filed within nine months after the date of shipment, together with a copy of the paid freight bill.

13. Articles of Extraordinary Value

i. No carrier is bound to carry any documents, specie or articles of extraordinary value unless by a special agreement to do so.

ii. If such goods are carried without a special agreement and the nature of the goods is not disclosed in the contract of carriage, the carrier shall not be liable for any loss or damage in excess of the maximum liability stipulated in Article 9.

### 14. Freight Charges

i. If required by the carrier, the freight and all other lawful charges accruing on the goods shall be paid before delivery.

ii. If upon inspection it is ascertained that the goods shipped are not those described in the contract of carriage, the freight charges must be paid upon the goods actually shipped with any additional charges lawfully payable on the freight charges.

iii. If a consignor does not indicate that a shipment is to move prepaid, or does not indicate how the shipment is to move, it will automatically move on a collect basis.

### 15. Dangerous Goods

Every person, whether as principal or agent, shipping dangerous goods without previous full disclosure to the carrier as required by law shall indemnify the carrier against all loss, damage or delay caused by the failure to disclose and such goods may be warehoused at the consignor's risk and expense.

### 16. Undelivered Goods

i. If, through no fault of the carrier, the goods cannot be delivered, the carrier shall immediately give notice to the consignor and consignee that delivery cannot be made and shall request disposal instructions.

ii. Pending receipt of disposal instructions,

A. the goods may be stored in the warehouse of the carrier, subject to a reasonable charge for storage, or

B. if the carrier has notified the consignor of this intention, the goods may be removed to and stored in a public or licensed warehouse at the expense of the consignor, without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.

### 17. Return of Goods

If a notice has been given by the carrier pursuant to paragraph i of Article 16, and no disposal instructions have been received within 10 days after the date of such notice, the carrier may return to the consignor, at the consignor's expense, all undelivered shipments for which such notice has been given.

### 18. Alterations

Subject to Article 19, any limitation in the contract of carriage on the carrier's liability and any alteration to the contract of carriage shall be signed or initialled by the consignor and the originating carrier or their agents and, unless signed and initialled, shall be without effect.

### 19. Weights

i. It shall be the responsibility of the consignor to show correct shipping weights of the shipment on the contract of carriage.

ii. If the actual weight of the shipment does not agree with the weight shown on the contract of carriage, the weight shown on the contract of carriage may be corrected by the carrier.

### 20. C.O.D. Shipments

i. The carrier shall not deliver a C.O.D. shipment unless payment is received in full.

ii. The charge for collecting and remitting the amount of C.O.D. bills for C.O.D. shipments must be collected from the consignee unless the consignor has instructed otherwise on the contract of carriage.

iii. The carrier shall keep all C.O.D. money in a trust fund or account separate from the other revenues and funds of the carrier's business.

iv. The carrier shall remit all C.O.D. money to the consignor, or person designated by the consignor, within 15 days after collection.

O. Reg. 643/05, Sched. 1.

SCHEDULE 2
UNIFORM CONDITIONS OF CARRIAGE — LIVESTOCK AND ANIMAL SPECIALTIES

Case 2:19-cv-01620-PP   Filed 02/14/20   Page 9 of 30   Document 6-1

## 1. Liability of Carrier

The carrier of the goods is liable for any loss of or damage or injury to goods accepted by the carrier or the carrier's agent except as provided in this Schedule.

## 2. Liability of Originating Carrier

Where a shipment is accepted for carriage by more than one carrier, the originating carrier, in addition to any other liability under this Schedule, is liable for any loss of or damage or injury to the goods while they are in the custody of any other carrier to whom the goods are delivered and the onus of proving that the loss, damage or injury was not caused or did not result while the goods were in the custody of another carrier to whom the goods were delivered is upon the originating carrier.

## 3. Recovery from Connecting Carriers

The originating carrier or the carrier who assumes responsibility for delivery to the consignee (called the delivering carrier in this Schedule), as the case may be, is entitled to recover from any other carrier to whom the goods are delivered the amount that the originating carrier or delivering carrier, as the case may be, is required to pay for the loss of or damage or injury to the goods while they were in the custody of such other carrier.

## 4. Remedy by Consignor or Consignee

Nothing in Article 2 or 3 deprives a consignor or consignee of any rights the consignor or consignee may have against any carrier.

## 5. Exceptions from Liability

The carrier shall not be liable for loss, damage, injury or delay to any of the goods described in the contract of carriage caused by an act of God, the Queen's or public enemies, riots, strikes, a defect in the goods, an act or default of the consignor, owner or consignee, authority of law, quarantine or difference in weights of livestock or animal specialties by natural shrinkage.

## 6. Delay

No carrier is bound to carry goods by any particular public truck or in time for any particular market or otherwise than with due dispatch, unless by agreement that is specifically endorsed in the contract of carriage and signed by the parties.

## 7. Routing by Carrier

If the carrier forwards the goods by a conveyance that is not a public truck, the liability of the carrier is the same as though the entire carriage were by public truck.

## 8. Stoppage in Transit

If goods are stopped and held in transit at the request of the party entitled to so request, the goods are held at the risk of that party.

## 9. Valuation

Subject to Article 10, the amount of any loss, injury or damage for which the carrier is liable, whether or not the loss, injury or damage results from negligence, shall be the lesser of,

     i. the value of the goods at the place and time of shipment including the freight and other charges if paid, and

     ii. $3.31 per kilogram computed on the total weight of the shipment.

## 10. Declared Value

If the consignor has declared a value of the goods on the face of the contract of carriage, the amount of any loss, injury or damage for which the carrier is liable shall not exceed the declared value.

## 11. Consignor's Risk

     i. If it is agreed that the goods are carried at the risk of the consignor or owner of the goods, that agreement covers only such risks as are necessarily incidental to the carriage and the agreement does not relieve the carrier from liability for any loss or damage, injury or delay that results from the negligence of the carrier or the carrier's agents or employees.

     ii. The burden of proving absence of negligence shall be on the carrier.

## 12. Notice of Claim

No carrier is liable for loss, damage, injury or delay to any goods carried under the contract of carriage unless notice of the loss, damage, injury or delay setting out particulars of the origin, destination and date of shipment of the goods and the estimated amount claimed in respect of such loss, damage, injury or delay is given in writing to the originating carrier or the delivering carrier within 90 days after delivery of the goods or, in the case of failure to make delivery, within 90 days after a reasonable time for delivery has elapsed.

13. Articles of Extraordinary Value

i. No carrier is bound to carry any documents, specie or articles of extraordinary value unless by a special agreement to do so.

ii. If such goods are carried without a special agreement and the nature of the goods is not disclosed in the contract of carriage, the carrier shall not be liable for any loss, injury, damage or delay in excess of the maximum liability stipulated in Article 9.

14. Freight Charges

i. If required by the carrier, the freight and all other lawful charges accruing on the goods shall be paid before delivery.

ii. If upon inspection it is ascertained that the goods shipped are not those described in the contract of carriage, the freight charges must be paid upon the goods actually shipped with any additional charges lawfully payable on the freight charges.

iii. If a consignor does not indicate that a shipment is to move prepaid, or does not indicate how the shipment is to move, it will automatically move on a collect basis.

15. Undelivered Goods

i. If, through no fault of the carrier, the goods cannot be delivered, the carrier shall immediately give notice to the consignor and consignee that delivery cannot be made and shall request disposal instructions.

ii. Pending receipt of disposal instructions,

A. the goods may be stored in the warehouse of the carrier, subject to a reasonable charge for storage, or

B. if the carrier has notified the consignor in writing of this intention, the goods may be removed to and stored in a public or licensed warehouse at the expense of the consignor, without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.

16. Alterations

Any limitation in the contract of carriage on the carrier's liability and any alteration to the contract of carriage shall be signed or initialled by the consignor and the originating carrier or their agents and, unless signed and initialled, shall be without effect.

17. C.O.D. Shipments

i. The carrier shall clearly indicate, on the documents accompanying each C.O.D. shipment received and transported, the name and address of the consignor or other person designated as payee to whom the delivering carrier shall remit C.O.D. funds collected upon delivery of the shipment.

ii. The carrier shall keep all C.O.D. money in a trust fund or account separate from the other revenues and funds of the carrier's business.

iii. The carrier shall remit all C.O.D. money to the consignor or person designated by the consignor within 15 days after collection.

iv. If a C.O.D. shipment is not delivered within 10 days of its arrival at its destination, the carrier shall notify the consignor in writing giving reasons for the non-delivery and shall obtain instructions in writing for disposal of the shipment.

O. Reg. 643/05, Sched. 2.

SCHEDULE 3
UNIFORM CONDITIONS OF CARRIAGE — HOUSEHOLD GOODS

1. Liability of Carrier

The carrier of the goods is liable for any loss of or damage to goods accepted by the carrier or the carrier's agent except as provided in this Schedule.

2. Liability of Originating and Delivering Carriers

Where a shipment is accepted for carriage by more than one carrier, the originating carrier and the carrier who assumes responsibility for delivery to the consignee (called the delivering carrier in this Schedule), in addition to any other liability under this Schedule, are liable for any loss of or damage to the goods while they are in the custody of any other carrier to whom the goods are delivered and from which liability the other carrier is not relieved.

3. Recovery from Connecting Carriers

The originating carrier or the delivering carrier, as the case may be, is entitled to recover from any other carrier to whom the goods are delivered the amount that the originating carrier or delivering carrier, as the case may be, is required to pay for the loss of or damage to the goods while they were in the custody of such other carrier.

4. Remedy by Consignor or Consignee

Nothing in Article 2 or 3 deprives a consignor or consignee of any rights the consignor or consignee may have against any carrier.

5. Exceptions from Liability

i. The carrier shall not be liable for loss, damage or delay to any of the goods described in the contract of carriage caused by an act of God, the Queen's or public enemies, riots, strikes, a defect in the goods, an act or default of the consignor, owner or consignee, authority of law or quarantine.

ii. Except as a result of the negligence of the carrier or the carrier's agents or employees, the carrier shall not be liable for,

A. damage to fragile articles that are not packed and unpacked by the contracting carrier or the contracting carrier's agent or employees,

B. damage to the mechanical, electronic, digital or other operations of radios, televisions, computers, clocks, cameras, audio and visual recording and playing equipment, appliances, musical instruments and other equipment, irrespective of who packed or unpacked such articles, unless servicing and preparation was performed by the contracting carrier or the carrier's agent or employees,

C. deterioration of or damage to perishable food, plants or pets, or

D. loss of contents of consignor-packed articles, unless the containers used are opened for the carrier's inspection and articles are listed in the contract of carriage and receipted for by the carrier,

iii. The carrier shall not be liable for,

A. damage to or loss of a complete set or unit when only part of such set is damaged or lost, in which event the carrier shall only be liable for repair or replacement of the lost or damaged piece or pieces,

B. damage to the goods at a place or places of pick-up at which the consignor or the consignor's agent is not in attendance, or

C. damage to the goods at a place or places of delivery at which the consignee or the consignee's agent is not in attendance and cannot give receipt for goods delivered.

iv. The burden of proving absence of negligence for the purpose of paragraph ii is on the carrier.

6. Delay

i. At the time of acceptance of the contract, the originating carrier shall provide the consignor with a date or time period within which delivery is to be made.

ii. Failure by the carrier to effect delivery within the time specified on the face of contract of carriage shall render the carrier liable for reasonable food and lodging expenses incurred by the consignee.

    iii. Failure by the consignee to accept delivery when tendered within the time specified in the contract of carriage shall render the consignee liable for reasonable storage in transit, handling and redelivery charges incurred by the carrier.

## 7. Routing by Carrier

If the carrier forwards the goods by a conveyance that is not a public truck, the liability of the carrier is the same as though the entire carriage were by public truck.

## 8. Stoppage in Transit

If goods are stopped and held in transit at the request of the party entitled to so request, the goods are held at the risk of that party.

## 9. Valuation

Subject to Article 10, the amount of any loss or damage for which the carrier is liable, whether or not the loss or damage results from negligence of the carrier or the carrier's employees or agents, shall be the lesser of,

    i. the value of the goods at the place and time of shipment, and

    ii. the greater of,

        A. the value of the goods as represented by the consignor on the face of the contract of carriage, and

        B. $4.41 per kilogram computed on the total weight of the shipment.

## 10. Election

    i. If the consignor so elects on the face of the contract of carriage, the maximum liability shall be based on $1.32 per kilogram per article lost or damaged.

    ii. If the liability is calculated under Article 9, the consignor shall pay to the carrier any additional charges incurred by the carrier to provide insurance coverage in excess of $1.32 per kilogram per article.

## 11. Consignor's Risk

    i. If it is agreed that the goods are carried at the risk of the consignor, that agreement covers only such risks as are necessarily incidental to the carriage and the agreement does not relieve the carrier from liability for any loss or damage or delay that results from the negligence of the carrier or the carrier's agents or employees.

    ii. The burden of proving absence of negligence shall be on the carrier.

## 12. Notice of Claim

    i. No carrier is liable for loss, damage or delay to any goods carried under the contract of carriage unless notice of the loss, damage or delay setting out particulars of the origin, destination and date of shipment of the goods and the estimated amount claimed in respect of such loss, damage or delay is given in writing to the originating carrier or the delivering carrier within 60 days after delivery of the goods or, in the case of failure to make delivery, within nine months after the date of shipment.

    ii. The final statement of the claim must be filed within nine months after the date of shipment.

    iii. The originating carrier or the delivering carrier, as the case may be, shall acknowledge receipt of the claim within 30 days after receipt.

## 13. Articles of Extraordinary Value

    i. No carrier is bound to carry any documents, specie or articles of extraordinary value unless by a special agreement to do so.

    ii. If such goods are carried without a special agreement and the nature of the goods is not disclosed in the contract of carriage, the carrier shall not be liable for any loss or damage in excess of the maximum liability stipulated in Article 9.

## 14. Freight Charges

    i. If required by the carrier, the freight and all other lawful charges accruing on the goods shall be paid before delivery but, if the total charges exceed the estimated charges by more than 10 per cent and if the excess charges are for additional or different goods or services from those to which the estimate applied, the consignee shall pay the difference between the estimated and total charges within 15 days, excluding Saturdays, Sundays and other holidays, after delivery.

Case 2:19-cv-01620-PP    Filed 02/14/20    Page 13 of 30    Document 6-1

ii. The 15-day extension in paragraph i does not apply if the carrier notifies the consignor of the total charges immediately after the goods are loaded or if the consignor signs a waiver of the extension.

iii. If upon inspection it is ascertained that the goods shipped are not those described in the contract of carriage, the freight charges must be paid upon the goods actually shipped with any additional charges lawfully payable on the freight charges.

iv. If a consignor does not indicate that a shipment is to move prepaid, or does not indicate how the shipment is to move, it will automatically move on a collect basis.

## 15. Dangerous Goods

Every person, whether as principal or agent, shipping dangerous goods without previous full disclosure to the carrier as required by law shall indemnify the carrier against all loss, damage or delay caused by the failure to disclose and such goods may be warehoused at the consignor's risk and expense.

## 16. Undelivered Goods

i. If, through no fault of the carrier, the goods cannot be delivered, the carrier shall immediately give notice to the consignor and consignee that delivery cannot be made and shall request disposal instructions.

ii. Pending receipt of disposal instructions,

     A. the goods may be stored in the warehouse of the carrier, subject to a reasonable charge for storage, or

     B. if the carrier has notified the consignor of this intention, the goods may be removed to and stored in a public or licensed warehouse at the expense of the consignor, without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.

## 17. Alterations

Subject to Article 18, any limitation in the contract of carriage on the carrier's liability and any alteration to the contract of carriage shall be signed or initialled by the consignor and the originating carrier or their agents and, unless signed and initialled, shall be without effect.

## 18. Weights

i. It shall be the responsibility of the originating carrier or such carrier's agent to show on the contract of carriage the correct tare and gross and net weights by use of a certified public scale and to attach the weigh scale ticket to such carrier's copy of the contract of carriage.

ii. If there is no certified public scale at the place of origin or within a radius of 16 kilometres of the place of origin, the gross weight shall be deemed to be 112 kilograms per cubic metre of properly loaded van space.

O. Reg. 643/05, Sched. 3.

# EXHIBIT 2

2015 ONSC 1887
Ontario Superior Court of Justice

A & A Trading Ltd. v. DIL'S Trucking Inc.

2015 CarswellOnt 4007, 2015 ONSC 1887

# A & A Trading Ltd., Plaintiff and Dil's Trucking Inc., Defendant

Thomas A. Bielby J.

Heard: March 17, 2015
Judgment: March 24, 2015
Docket: CV-14-3373

Counsel: M.L. Biggar, for Plaintiff, Moving Party
Heather Gray, for Defendant, Responding Party

Subject: Civil Practice and Procedure; Contracts; Public

**Headnote**
  **Civil practice and procedure**

  **Transportation**

*Thomas A. Bielby J.*:

**Introduction**

1      The plaintiff herein seeks summary judgment for the value of goods lost, together with costs on a substantial indemnity basis. The plaintiff hired the defendant to transport its goods from Toronto to Calgary. While in transit, the goods were stolen.

2      The goods had a value of $263,520.00 and it is in this amount the plaintiff seeks judgment.

**Facts**

3      The plaintiff/consignor is in the import/export business. In mid-April 2004, Mr. Ashna Hamd, the owner of the plaintiff corporation contacted Mr. Dilbag Singh, the owner of the defendant corporation, by cell phone, seeking a quote for the delivery of a consignment of goods from Toronto to Calgary.

4      Mr. Hamd advised Mr. Singh that the goods had a value of between $250,000.00 and $263,000.00 and asked Mr. Singh if the defendant had sufficient insurance. Mr Singh confirmed that there was sufficient insurance and Mr. Hamd then hired the defendant to deliver the consignment.

5      On the day of shipment, April 25, 2014, Mr. Hamd filled out his own standard **bill** of **lading** for the consignment. He did not declare a value for the consignment on the face of the **bill** of **lading**. His practice was not to do so, but instead attached to the **bill** of **lading** a copy of an invoice number 140407 and a packing slip. The invoice showed the value of the consignment to be $263,520.00.

WestlawNext CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.     1

6      These documents were handed to Mr. Jillani, an employee of the defendant who attended to pick up the consignment. Mr. Jillian also completed a **bill** of **lading** and on it referenced invoice number 140407. The defendant's **bill** of **lading** was signed by both Mr. Jillani and Mr. Hamd and a copy was given to Mr. Hamd.

7      On cross examination, Mr. Singh acknowledged that it was common sense and practice to incorporate, by reference on the **bill** of **lading**, information provided by the consignor rather than to re-write the same information on the **bill** of **lading**. It was the defendant's practice to attach or include all documents provided by the consignor with the defendant's **bill** of **lading**.

8      On April 28, 2014, the consignment was stolen while in transit and in the possession of the defendant.

9      On these facts, it is clear the defendant was aware of the value of the plaintiff's consignment.

**Issues**

10      The *Highway Traffic Act* R.S.O. 1990 Chapter H.B, section 191.0.1 states:

(1) Every contract of carriage for a person to carry the goods of another person by commercial motor vehicle for compensation shall contain the information required by the Regulations and shall be deemed to include the terms and conditions set out in the Regulations.

11      The *Ontario Regulation* 643/05, section 4 sets out what must be contained in a contract for carriage. Schedule 1, section 1, of the *Regulation*, states:

The carrier of the goods described in this contract is liable for any loss of or damage to goods accepted by the carrier or the carrier's agent except as provided in this schedule.

12      Section 9 and10 of Schedule 1, in effect, limits the value of the loss to $4.41per kilogram unless the consignor, in this case, the plaintiff, has declared a value of the goods "on the face of the contract of carriage".

13      In this case, if the actual value has not been declared on the "face of the contract of carriage", the plaintiff's damages are limited to approximately $100,000.00, significantly less than the actual value of the goods, as noted above, $263,520.00.

14      The issues to be determined are:

1. whether the issue can be determined by summary judgement motion or is there a genuine issue requiring a trial;

2. what is the contract of carriage; and

3. did the plaintiff, as consignor, declared the value of the consignment on the face of the contract of carriage.

**Analysis**

*Is There a Genuine Issue For Trial?*

15      Rule 20.01 of the Rules of Practice states the following:

(1) A plaintiff may, after the defendant has delivered a statement of defence or served a notice of motion, move with supporting affidavit material or other evidence for summary judgment on all or part of the claim in the statement of claim.

Rule 20.04 states as follows:

(2) The court shall grant summary judgment if,

(a) the court is satisfied that there is no genuine issue requiring a trial with respect to a claim or defence: or

WestlawNext. Canada Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.     2

(b) the parties agree to have all or part of the claim determined by a summary judgment and the court is satisfied that it is appropriate to grant summary judgment.

(2.1) In determining under clause (2) (a) whether there is a genuine issue requiring a trial, the court shall consider the evidence submitted by the parties and, if the determination is being made by a judge, the judge may exercise any of the following powers for the purpose, unless it is in the interest of justice that such powers to be exercised only at trial:

1. Weighing the evidence.

2. Evaluating the credibility of a deponent.

3. Drawing any reasonable inference from the evidence.

(2.2) A judge may, for the purposes of exercising any of the powers set out in subrule (2.1), order that oral evidence be presented by one or more parties, with or without time limits on its presentation.

16    In *Hyrniak v. Mauldin* [2014] SCC 7, the Supreme Court of Canada laid out the analysis to be followed on a motion for summary judgment. First, the court should determine if there is a genuine issue requiring trial, based only on the evidence before the court, without using its fact-finding powers conferred upon the court in subrule 20.04(2.1).

17    If the motion judge is able to reach a fair and just determination on the merits, there will be no genuine issue requiring a trial. This will occur when the process allows the judge to make the necessary findings of fact and to apply the law to the facts, and where the process offers a timely, affordable, and proportionate means to achieve a result (para. 66).

18    It there appears to be a genuine issue requiring a trial, the court should determine if the need for a trial can be avoided by using the powers under subrule 20.04(2.1) and (2.2). The judge may use those powers at his/her discretion, provided that their use is not against the interests of justice (paras 66-68).

19    In this matter, the facts, as I have set them out, are sufficient to make a fair and just determination of issues two and three and there is not a genuine issue requiring a trial.

**Contract for Carriage**

20    Section 4 of Regulation 643/05 sets out what must be contained in a contract of carriage and one of the requirements is that the contract must contain a space to show the declared value of the shipment, if any. Another is that the contract must bear the signatures of both the carrier and the consignor (ss. (i) (q)).

21    Neither the plaintiff's nor the defendant's **bill** of **lading** contained a space to declare value and only the **bill** of **lading** presented by the defendant contained both signatures.

22    The Regulation does not, however, define a contract of carriage. Is it simply a **bill** of **lading** or is it something else or can it be made up of a number of documents?

23    The Regulation does not expressly limit or equate a contract of carriage to a **bill** of **lading**.

24    Can oral representations form part of the contract?

25    In *Fleet Express Lines Ltd. v. Continental Can Co.*, [1969] 2 O.R. 97, the defendant agreed to deliver approximately two million cans to the plaintiff. Representatives of the parties had a least two conversations concerning the terms of shipment. At trial, the issue was whether a **bill** of **lading** constituted the entire contract between the parties under the *Public Commercial Vehicles Act*, and the accompanying Regulations.

26    Addy J. stated, at page 4:

Case 2:19-cv-01620-PP    Filed 02/14/20    Page 18 of 30    Document 6-1

In each case the court must decide whether the parties have or have not reduced their agreement to the precise terms of an all-embracing written formula. If they have, oral evidence will not be admitted to vary or to contradict it; if they have not, the writing is but part of the contract and must be set side by side with the complementary oral terms. The question is at bottom one of intention and, like all such questions, elusive and conjectural.

27      Addy J. goes on and makes reference to the decision in *The Ardennes (Owner of Cargo) v. The Ardennes (Owners),* [1950] 2 All E.R. 517 in which Chief Justice Lord Goddard held that the bill of lading was not the entire contract. On page 4, Addy J. quotes from pp. 519-20 of the *Ardennes* case which reads,

It is, I think, well settled that a bill of lading is not, in itself, the contract between the shipowner and the shipper of goods, though it has been said to be excellent evidence of its terms.

28      Addy J. ruled that the real contract was the oral contract and that bills of lading were nothing more than receipts that contained information identifying the parties and the goods.

29      At page 6, bottom paragraph, Addy J. wrote:

In my view, before any Court can find that the Legislature has abdicated its right to legislate in the field of contract between citizens, and to vary common law principles by delegating such powers to the Lieutenant-Governor in Council, the legislation purporting to do this must be absolutely clear and unequivocal. A power to prescribe the form or conditions which are to be included in the bill of lading is not a power to state what the implied conditions will be and what the rights between the contracting parties will be, if certain clauses are excluded from the bill of lading. If such is the meaning of the Regulation, then if I find that it exceeds the provisions of the Act and is invalid in so far as it purports to state that, if there is no specific endorsement of the bill of lading to the effect that there is a warranty as to time of delivery, no such condition can otherwise be agreed upon between the parties.

30      The reasoning in *Fleet* was followed by the Federal Court of Canada in *Tagish Kwan Corp. (Trustee of) v. R.*, 49 A.C.W.S. (3d) 680, where, at paragraph 35, the court said:

Where a written contract does not constitute a complete expression of the contractual arrangement between the two parties, then the Parol Evidence Rule does not apply and that part of the agreement which is oral may be proven by oral evidence: for example *Fleet Express Lines Ltd. v. Continental Can Co. of Canada Ltd.* (1969) 4 D.L.R. (3d) 466.

31      In *Solway v. Davis Moving & Storage Inc.*, 2001 CanLII 28079(aff'd on appeal 62 O.R. (3d) 522) the plaintiffs hired the defendant to move the contents of their home. The bill of lading signed by the plaintiffs on moving day limited the defendant's liability to \$.60 per pound, as per the *Truck Transportation Act*, R.S.O. 1990, c. T.22. The plaintiffs lost the contents when the truck was stolen. The plaintiffs sued for the loss of the contents, loss of income (they operated a business out of their home) and punitive damages.

32      The plaintiffs relied on the fact that the defendant represented to them that their contents would be kept safe in a trailer, which would be in a fenced-in area with surveillance and with someone onsite 24 hours a day. The defendant relied on the limitation of liability clause in the bill of lading.

33      After a review of the law, which included the *Fleet Express* case, the court concluded at paragraph 100:

It is the defendants who should bear those losses which were attributable to the breach of the contract between the parties. They cannot rely on a limitation of liability clause where it would be unreasonable to enforce it in the circumstances.

34      The Court of Appeal upheld the trial judge's decision on the basis that it would have been unconscionable in the circumstances of the case to enforce the limitation of liability clause in the bill of lading, particularly in light of the oral assurances by the defendants that their goods would be kept safe.

WestlawNext Canada Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

35      The plaintiff submits that the oral representations of the defendant's owner confirming there was insurance sufficient to cover the value of the consignment, being between $250,000.00 and $263,000.00 was relied upon by the plaintiff and is part of the contract.

36      The plaintiff further submits that invoice number 140407 was part of the contract of carriage in that it was part of the documents given to the driver. Further, that the defendant's driver noted on the front of the defendant's **bill** of **lading**, the following: "Invoice # 140407" (Tab B of the motion record) and thereby incorporated the information in the invoice into the **bill** of **lading**.

37      Counsel for the defendant submits, at paragraph 12 of her factum, that Mr. Hamd did not declare a value for the consignment on the face of his own **bill** of **lading**. Implicit in that submission is the suggestion that the **bill** of **lading** was the contract of carriage.

38      I find that the contract of carriage is not limited to or equated to a **bill** of **lading** and, in that regard, rely on the authorities referenced.

39      I find that the oral representation as to insurance, made by Mr. Singh, was relied upon by the plaintiff and is part of the contract of carriage and that was the intention of the parties. It was part of the shipping agreement between the parties. Without that representation, the plaintiff would have not hired the defendant to transport the consignment. The plaintiff wanted to be assured that the defendant has sufficient insurance to cover the value of his consignment.

40      I also conclude that the contract of carriage included the **bill** of **lading** prepared by the defendant's representative and signed by both parties. Also included in that contract was invoice number 140407 because it was noted on the **bill** of **lading** and a copy of the invoice provided by the plaintiff.

41      I accept that it was the practice of the defendant, as expressed in his cross-examination, to refer to other documents on **bills** of **lading**, such as the invoice, to avoid writing all the terms. At page 40 of Mr. Singh's cross-examination, when asked why the invoice number was recorded on his **bill** of **lading** he stated, "Because it is common sense in our industry to put that there if we do get it from the customer." (line 171).

42      At page 41-42 of Mr. Singh's cross-examination, he discusses the inclusion of the invoice number on the **bill** of **lading** and states, "Yes, why re-write it, because you already have the info here." (line 179).

43      To rule otherwise would be unreasonable.

**Was the Value of the Goods Declared by the Consignor on the Face of the Contract of Carriage?**

44      As noted, a carrier is liable for any loss of the consignment (Reg. 643/05, Sch. 1, s. 1).

45      Section 3 of the Regulation obligates a carrier to carry insurance for loss or damage to goods in an amount sufficient to cover the loss or damage of the goods carried.

46      While, as noted previously, contract of carriage must include a space thereon for value of goods, the value of the goods are not required to be set out in and only in that space. The value of the goods is to be declared "on the face of the contract of carriage".

47      Specifically. Section 10 of the Regulation states:

If the consignor has declared a value of the goods on the face of the contract of carriage, the amount of any loss or damage for which the carrier is liable shall not exceed the declared value.

48      Both parties attached to their **bills** of **lading** the invoice and/or a reference to the invoice number.

WestlawNext CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

49      The plaintiff argues and I accept that the legislative intent behind the requirement of the shipper to declare the value of the consignment on the face of the contract of carriage is to provide notice to the carrier of the value of the risk and to provide the carrier with the opportunity to decide whether to assume the risk (*Anticosti Shipping Co. v. St. Amand*, [1959] S.C.R. 372, para. 8; *Sept Iles Express Inc. v. Tremblay*, [1964] Ex. C.R. 213, para. 13).

50      The plaintiff submits that the defendant knew of the value of the consignment as a result of the oral communication and the inclusion of and/or reference to Invoice 140407.

51      The plaintiff submits that the limitation of liability clause in section 9 of the Regulations should not apply in these circumstances on the grounds that the value of the consignment was included as part of the contract of carriage and that the defendant had full knowledge of the value.

52      Counsel for the defendant submits that the onus was on the plaintiff as the consignor to declare the value of consignment on the face of the contract of carriage, specifically noting the value was not recorded on either **bill** of **lading**.

53      It is submitted that the wording of the Regulation promotes and ensures predictability in transactions between shippers and carriers *(Phoenix Bio-Tech Corp. v. Day & Ross Inc.* (2003) 125 A.C.W.S. (3d) 529, para. 20).

54      It is submitted that, as a result of the value not being recorded on the face of the **bill** of **lading**, the plaintiff's right to recovery is limited to the lower value as set out in section 9 of the Regulation.

55      Generally speaking, legal authority states that the failure of a consignor to declare the value on the face of a **bill** of **lading** will mean that the consignor must bear any loss in excess of that prescribed by s. 9 of the Regulation. This rule is discussed in the Supreme Court of Canada's decision in *Anticosti (supra)*.

56      In *Anticosti*, the respondent recruited the carrier to have his truck shipped. The shipping clerk filled out the **bill** of **lading** but no value of the consignment was declared on it. The truck and consignment were subsequently damaged and the carrier relied on a limitation of liability clause in the *Water Carriage of Goods Act*, R.S.C. 1952, c. 291.

57      At paragraph 10, the Court stated:

> The responsibility for seeing that the value of the thing shipped is declared and inserted on the bill is on the shipper and any consequential hardship must be charged against his own failure to respect that requirement.

58      What is not clear is whether the onus on the consignor applies notwithstanding the fact that the carrier has knowledge of the value of the consignment or that the carrier was provided with a document in which the value is declared. In *Anticosti*, the Supreme Court of Canada stated, in *obiter*, that the carrier's limitation would continue to apply even where the carrier has knowledge of the value of the consignment (page 375).

59      In *Anticosti*, the carrier was only informed of the shipper's name, the article to be shipped, its make, weight and destination. Nothing in the decision suggests the carrier was aware of the value of the consignment.

60      A rigid position is also taken in the *Sept Iles* decision (*supra*) which cited, with approval, the English case of *Pendle and Rivet Ltd. v. Ellerman Lines Ltd.*, [1927] 33 Comm. Cas. 70at 78, in which the court held that, notwithstanding the fact that a document indicating the value of the goods was sent to the carrier, the limitation of liability, under the *British Carriage of Goods by Sea Act*, applied.

61      *Corcoran v. Ehrlich Transport Ltd*. et al, 1984 CanLII 2023 (ONCA) is a decision of the Ontario Court of Appeal. In that case, the plaintiff's horse was killed by the negligence of the driver of the defendant transport company. The defendant relied on the limitation of liability contained in Schedule A to the *Public Commercial Vehicles Act* RSO 1970, c.375.

WestlawNext CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

62     Section 10 of that legislation limited liability to a formula amount unless a higher value is declared on the face of the bill of lading. Further, the bill of lading is to be signed by the consignor. A bill of lading was prepared which included the printed words showing the value of the horse as $1,000.00 but it was not signed by or even seen by the plaintiff, the consignor.

63     At trial, the plaintiff recovered the full value of the horse on the ground that the bill of lading had not been issued to the plaintiff as required.

64     The Ontario Court of Appeal dismissed the appeal ruling that the legislative scheme required the carrier to give the consignor the opportunity of declaring the true value of the goods. Since the bill had not been issued to the plaintiff, the defendant could not rely on the statutory limitation (headnote).

65     While *Corcoran* did not mention the value of the horse to the defendant, the sales slip setting out the value was given to the defendant.

66     Bills of lading were required to include a space where the value of the consigned goods could be included. While this space was not filled out, it was noted on the bill of lading under the heading "Description and Declared Value of Each Animal" "$1,000.00." The bill of lading was not signed by the plaintiff.

67     The Appeal Court in *Corcoran* agreed with the trial judge's finding that the carrier had not issued the bill of lading to the plaintiff before the loss and therefore the carrier could not benefit under the legislation. Without the carrier presenting the bill of lading to the consignor, thereby allowing him to sign the bill of lading and make a declaration of value, the result is that section 10 was inoperative.

68     Continuing with *Corcoran*, the Court of Appeal distinguished the *Anticosti* decision on the basis of the different legislative regimes.

69     It is important to distinguish these cases and the legislative schemes before them. The declaration of value was to be on the face of the bill of lading as distinct from contracts of carriage.

70     In regards to the interpretation of statutes, Paragraph 87, in *Driedger's Construction of Statutes* (2 nd ed. 1830) page 87 as referenced and adopted by the Supreme Court of Canada in *Rizzo v. Rizzo Shoes Ltd.* 1998 CarswellOnt 1, paragraph 21, states:

> Today there is only one principle or approach, namely, the words of an Act are to be read in their entire context and in their grammatical and ordinary sense harmoniously with the scheme of the Act, the object of the Act and the intention of Parliament.

71     The *Interpretation Act* R.S.O. 1990, c. 11, section 10 states:

> Every Act shall be deemed to be remedial, whether its immediate purport is to direct the doing of any thing that the Legislature deems to be for the public good or to prevent of punish the doing of any thing that it deems to be contrary to the public good, and shall accordingly receive such fair, large and liberal construction and interpretation as well best ensure the attainment of the object of the Act according to its true intent, meaning and spirit.

72     In the respondent's factum, counsel discusses the meaning of the phrase, "on the face." In *Saskatoon Gallery and Conservatory Corp. v. Deakin Fine Art Transport*, 1985 CanLII 74 (ONSC), Craig J., commencing at the bottom of page 8, discusses how the phrase is to be interpreted. He was assured by the counsel before him that there were no reported Canadian decisions dealing with the words, "on the fact of the bill of lading".

73     Craig J. noted that the bill of lading in issue before him was only one sheet of paper. He goes on to make reference to an American case, *Cunningham v. Great Southern Life Ins. Co.* 66 S.W. 2d 765, a decision of Justice Dunklin of the Court of Civil Appeals of Texas, who, at p. 773, stated:

WestlawNext. CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.     7

In Webster's New International Dictionary the following are among the definitions of the noun "face": The surface of anything; esp. the front, upper or outer part or surface; that which particularly offers itself to the view of the spectator.

Another definition given in 2 Bouv. Law Dict. 1175 is:

The outward appearance or aspect of a thing. The words of a written paper in their apparent or obvious meaning, as, the face of a note, bill, bond, check, draft, judgment record or contract...the face of a judgment for which it was rendered.

74     Black's Law Dictionary 9th ed. (United States of America; Thomson Reuters, 2009) at 668 provides the following definition of the noun "face" as it relates to documents; "the inscribed side of a document, instrument, etc."

**Decision**

75     On the face of the defendant's **bill** of **lading** was the reference to Invoice number 140407. On the face of the said invoice was the value of the consignment, $263,520.00. Both can be said to be on the inscribed side of the document.

76     I accept that I am to interpret statutes liberally and remedially. I am also to have regard to the intention of the Legislature. I find that, given the Regulation makes a carrier liable for the damage or loss of goods while in their possession, as noted above, the purpose of section 10 of Ontario Regulation 643/05 is to ensure that the carrier, in this case, the defendant, knows the financial risk he is taking by agreeing to provide carriage of the goods. If the risk is greater than a carrier can bear, he can decline the consignment.

77     The onus is on the consignor, in this case, the plaintiff, to ensure that he makes a declaration of value of the face of the contract of carriage.

78     I find that, by signing both **bills** of **lading** and specifically the defendant's **bill** of **lading**, the plaintiff was adopting the contents of the contract of carriage and any declarations therein can be considered to be made by the plaintiff.

79     I find that, having already determined that invoice number 140407 is part of the contract of carriage, the value of the plaintiff's property was set out on the face of the contract. On the face of the invoice is the value of the goods being the price the plaintiff paid for the goods.

80     My conclusion is further grounded in the fact that the driver for the defendant made written reference to the invoice on the face of the **Bill** of **lading** that the parties signed.

81     Such an interpretation meets the intent and purpose of section 10 of Regulation 643/05.

82     As well, the practice of bundling the documents together or at least referencing the invoice on the face of the **Bill** of **lading** certainly was the practice of the defendant and likely the practice in the industry.

83     I find that the full value of the consignment, $263, 520.00, was declared by the plaintiff on the face of the contract of carriage.

84     There is no genuine issue requiring a trial as the entire case rests on this ruling.

85     The plaintiff shall have judgment for $263,520.00 (less any amount already paid on behalf of the defendant, together with interest pursuant to the *Courts of Justice Act*.

86     If the parties cannot agree on costs, written representations can be made to me of no more than three pages in length, together with a bill of costs within 21 days of the release of this ruling.

WestlawNext. CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.        8

Case 2:19-cv-01620-PP    Filed 02/14/20    Page 23 of 30    Document 6-1

**End of Document**          Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

# EXHIBIT 3

# MOBILE SHRINK WRAP



CONTACT US

Get in touch and we'll get back to you as soon as we can.  We look forward to hearing from you!



# MOBILE SHRINK WRAP LTD

**Email**

Mobileshrinkwrapltd@gmail.com

**Phone**

905 327 4381

**Address**

42 Westgate Park Dr
St.Catharines ON
L2N 5W7



## CONTACT US

**Email**

Mobileshrinkwrapltd@gmail.com

**Phone**

905 327 4381

**Address**

42 Westgate Park Dr
St.Catharines ON
L2N 5W7



Copyright © 2020 Mobile Shrink Wrap — Stout WordPress theme by GoDaddy

# EXHIBIT 4

# HITEC GLOBAL PRESENCE

### The Netherlands (Head office)

**HITEC Power Protection BV**
Bedrijvenpark Twente 40
7602 KB Almelo
The Netherlands

Phone: +31 546 589 589
E-mail: info@hitec-ups.com

### Russia

**HITEC Power Protection Rus**
Building 9, Otradnaya street 2B
127273, Moscow
Russia

Phone: +7 (916) 155 98 16
E-mail: info@hitec-ups.com

### China

**Hitec Power Protection Co. Ltd.**
Room 311, Building 1,
No.508 ChuanHong Road
Chuansha Town, Pudong District
Shanghai, China

Phone: +86 021-50722038
E-mail: china@hitec-ups.com

### United Kingdom

**HITEC Power Protection Ltd.**
Unit B21a, Holly Farm Business Park
Honiley, Kenilworth
CV8 1NP, United Kingdom

Phone: +44 1926 484 535
E-mail: sales-uk@hitec-ups.com

### Spain

**HITEC Power Protection Ibérica S.L**
Pol. Molid'en Serra
C/ Baix Alt Penedes nave 4
43710 Santa Oliva (Tarragona)

Phone: +34 977 668 902
E-mail: spain@hitec-ups.com

### Malaysia

**HITEC Power Protection (Malaysia)
Sdn. Bhd.**
Level 3&4, Wisma Suria
Jalan Teknokrat 6, Cyber 5
63000 Cyberjaya
Selangor, Malaysia

Phone: +60 (0)3 8318 2346
E-mail: malaysia@hitec-ups.com

### United States of America

**Hitec Power Protection Inc.**
25707 Southwest Freeway
Rosenberg, Texas 77471
United States of America

Phone: +1 (281) 239-6116
E-mail: info@hitec-ups.com

### Taiwan

**Hitec Power Protection Taiwan Ltd.**
No.226-1, Wuhe Street
Qionglin Township
Hsinchu County 307, Taiwan

Phone: +886 3 5931197
E-mail: info@hitecasia.com