UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COOK LOGISTICS LLC,

Plaintiff,

v.

Case No. 19-cv-1620-pp

EQUIPMENT EXPRESS INC.,

Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION TO DISMISS (DKT. NO. 44)**

---

On July 23, 2020, the court held a hearing on the defendant's motion to dismiss, denied the motion and ordered the defendant to file an answer. Dkt. No. 19. The court entered a scheduling order, and set an August 8, 2021, discovery deadline. Dkt. No. 30. Over two months after that deadline had passed, and fifteen months after the court denied the defendant's motion to dismiss, the defendant filed a motion for reconsideration, arguing that new evidence disclosed in discovery weighed in favor of granting the motion. Dkt. No. 44. According to the defendant, the new evidence establishes that the plaintiff never solicited business for the defendant in Wisconsin and that the plaintiff's "primary" witness, Brian Hillier—a Canadian citizen living in Canada— was the sole individual who had a relationship with the defendant. Id. at 1.

A. Court's Order Denying the Motion to Dismiss (Dkt. No. 19)

On July 23, 2020, the court held a hearing on the defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and improper venue or *forum non conveniens* under Fed. R. Civ. P. 12(b)(3). Dkt. No. 19. The court concluded that it had personal jurisdiction because "the plaintiff had carried on solicitation services in Wisconsin on behalf of the defendant as described in Wisconsin's long arm statute" and because the defendant had sufficient minimum contacts with the state "through its business dealings with the plaintiff." Id. at 1. The court found that the defendant deliberately had entered into a broker-carrier agreement ("BCA") with the plaintiff, sending the BCA to Wisconsin for review and making the plaintiff its agent for solicitation activities. Dkt. No. 18 at 32:22. The court found that the defendant knew that solicitation could occur in Wisconsin on its behalf and that collection would occur in Wisconsin; the defendant sent its receipts to Wisconsin and the plaintiff paid the invoices from Wisconsin. In other words, the defendant's connection with Wisconsin arose out of contacts clearly articulated in the BCA. The court concluded that the defendant had targeted Wisconsin by hiring an "agent" in Wisconsin to solicit and refer business and manage the collections. Id. at 28:44-34:03

Under 28 U.S.C. §1391(b)(3), the court found that venue was proper in the Eastern District of Wisconsin because the court had personal jurisdiction over the defendant and there was no other district in which the case could otherwise be brought. Id. at 39:25.

Finally, the court declined to dismiss the case on *forum non conveniens* grounds. The court acknowledged that Canada would be an available—and adequate—alternative forum. Id. at 40:06. But while the court found that the balance of private interests did not weigh in favor of one court or the other, it concluded that the balance of public interests favored Wisconsin. Id at 46:11. It found that a court in the Eastern District of Wisconsin was better situated to consider interpretation of federal law such as the Carmack Amendment. Id. at 50:00-53:00. The court found that Wisconsin had a strong local interest in a breach of contract claim brought by a Wisconsin business. Id. Finally, the court found that Wisconsin citizens would not be unduly burdened by the court hearing a dispute over a Wisconsin contract. The court did not make a determination regarding whether this court might be more congested than a Canadian court. Id.

B. The Parties' Arguments

1. *The Defendant's Motion to Reconsider (Dkt. No. 44)*

On September 28, 2021—fourteen months after the hearing on the defendant's motion to dismiss—the defendant deposed Brian Hillier, an independent contractor for the plaintiff. Dkt. No. 44-1. The excerpt of the deposition transcript attached to the defendant's motion shows that Hillier testified that he was a contract driver and logistics coordinator for the plaintiff. Dkt. No. 44-1 at 3, lines 19-22. He testified that he was the only person employed by the plaintiff who had a relationship with the defendant. Id. at 6, lines 10-11. Hillier testified that he first learned of the defendant through a

referral from a friend, Bill Harrison, who drove for the plaintiff and lived in Canada. Id. at 6, lines 13-25; 7, lines 1-6. Hillier testified that he himself was a Canadian citizen, had never been a United States citizen and had lived in St. Catherine's, Ontario for the past thirty years. Id. at 2, lines 6-22. Hillier testified that Hitec Power Protection, Inc. (the assignor of the plaintiff's claim) was his customer, id. at 4, lines 1-10, and that Hitec was located in Rosenberg, Texas, id. at 7, lines 22-23. Hillier testified that he never randomly called customers to see if they had a new load to transport; the customer always contacted him first. Id. at 5, lines 2-8.

The defendant also attached to the motion the plaintiff's responses to the defendant's first set of interrogatories. Dkt. No. 44-4. When asked to identify all documents and communications that the plaintiff contended constituted the plaintiff's solicitation within Wisconsin for the defendant, the plaintiff responded, in part, that

> With regard to Defendant, specifically, Plaintiff first retained Defendant's services in connection with certain shipments on behalf of Hitec from Harrow, Ontario to Jacksonville, Florida in April 2018. After Defendant successfully transported those shipments, Plaintiff would keep Defendant in mind whenever it solicited any jobs that involved transportation to/from Canada. When the Hitec shipments to Washington[1] became available, Plaintiff accepted the job with the idea that Defendant could provide at least a portion of the actual transportation. The communications regarding these preliminary dealings were almost all done via telephone conversations involving Brian Hillier, working as Plaintiff's agent.

Id. at 2.

---

[1] The reference to "Washington" may be a typo; the plaintiff may have meant to type "Wisconsin."

Finally, the defendant attached to the motion an email dated August 29, 2019 from dadinwi.bh@gmail.com to a William Cisler at hitec.ups.com. Dkt No. 44-2. In this email, signed "Brian," the author wrote, "I'm getting close to scheduling a discovery hearing for the claim. We are disputing which country it will be filed in. If heard in Wisconsin, I win! It won't even see the courtroom. If it's in Canada, it's 50/50." Id. at 1-2.

The defendant asserts that the above constitutes evidence "revealed for the first time in discovery, after the Court's hearing and decision on the Motion to Dismiss." Dkt. No. 44 at 4. It asserts that this new evidence conflicts with statements made in the plaintiff's brief in opposition to the motion to dismiss. Id. at 5. The defendant argues that the plaintiff's opposition "falsely" stated that the plaintiff solicited business for the defendant from Wisconsin and "communicated such leads from Wisconsin." Id. The defendant contends that in fact, the plaintiff "does not actively solicit business" for the defendant, but that "Mr. Hillier acts as a contact person from [the plaintiff] for potential customers, who then sometimes refers the business to [the defendant], and Mr. Hillier does so from Canada, not Wisconsin." Id.

The defendant accuses the plaintiff of having "obscured the facts that Mr. Hillier conducts business for [the plaintiff] in Canada, that Mr. Hillier is the only person at [the plaintiff] who works with [the defendant], and that [the plaintiff] undertook no efforts at solicitation on behalf of [the defendant] in Wisconsin." Id. It contends that because of the plaintiff's "obfuscation," the

defendant "could not have discovered these facts except through discovery, after the decision on its Motion to Dismiss." Id.

The defendant insists that the new evidence "goes to the heart of" the court's reasons for denying the motion to dismiss. Id. at 6. The defendant says:

> Plaintiff argued in the Opposition that "[the defendant] engaged in substantial activities directed toward Wisconsin, benefitted from the solicitation of business and/or performance of services by [the plaintiff] on [the defendant's] behalf in Wisconsin, and expressly authorized [the plaintiff] to perform services—including the solicitation of business and collection of freight charges—on [the defendant's] behalf from [the plaintiff's] place of business in Wisconsin." Exhibit C, Plaintiff's Opposition, pg. 8. The Opposition further cited Wisconsin's long arm statute, WIS. STAT. §801.05(4)(a) (2020), as conferring personal jurisdiction over [the defendant] because "[s]olicitation or service activities were carried on within this state by or on behalf of the defendant." Exhibit C, Plaintiff's Opposition, pg. 7.
>
> The Court's Order denying the Motion to Dismiss relied and essentially incorporated Plaintiff's solicitation argument in finding that the Court had personal jurisdiction over [the defendant]. The Court Minutes and Order from the hearing on the Motion to Dismiss states that "Regarding personal jurisdiction, the Court concluded that because the plaintiff carried on solicitation services in Wisconsin on behalf of the defendant as described in Wisconsin's long arm statute, Wis. Stat. §801.05(1)(d) and because it concluded that the defendant had sufficient minimum contacts through its business dealings with the plaintiff to satisfy the requirements of due process, the court had personal jurisdiction. (Dkt. 19). Accordingly, it is clear that Plaintiff's representations concerning solicitation of business contained in the Opposition were material to the Court's decision on [the defendant's] Motion to Dismiss, and the Court should have the opportunity to consider the information revealed in discovery, that [the plaintiff] did not actively solicit business for [the defendant] and referrals of business from [the plaintiff] to [the defendant] were made by Mr. Hillier in Canada.

Id. at 6-7.

2. *The Plaintiff's Response (Dkt. No. 47)*

The plaintiff argues that the defendant's arguments regarding Brian Hillier are red herrings—that it was Thomas Cook, the plaintiff's Wisconsin-based owner and president, who directed substantive dealings with the defendant as part of the plaintiff's role as the defendant's agent under the broker-carrier agreement. Dkt. No. 47 at 8. The plaintiff attached a declaration from Thomas Cook, who averred that "all of the substantive . . . decision-making regarding the retention of [the defendant] the acceptance of the Hitec loads for transportation, the decision to broker those loads, the selection of [the defendant] as the motor carrier to transport the loads, and the determination of the terms and rates for such transportation was performed in my capacity as President of [the plaintiff] in my office in Delavan, Wisconsin." Dkt. No. 47-1 at ¶25. Thomas Cook averred that the defendant sent its payment invoices to the plaintiff in Delavan, Wisconsin and that the plaintiff would send payments from that Delavan, Wisconsin office to the defendant. Id. at ¶¶26-27. The plaintiff asserts that the defendant did not have direct contact with Hitec on the "subject loads," but used Thomas Cook (acting as the plaintiff) to bind the defendant to freight rates and other terms in the broker-carrier agreement. Dkt. No. 47 at 8-9. It argues that Hillier would present his leads on transportation work to the plaintiff in Wisconsin, and only after the plaintiff decided it could not handle the project would the plaintiff instruct Hillier to offer the work to the defendant. Id. at 12. The plaintiff asserts that the plaintiff's acts in Wisconsin "for all intents and purposes under the Broker-

Motor Carrier Agreement, were the acts of Defendant." Id. at 13. It says, in bold, that "[w]ithout [the plaintiff's] activities in Wisconsin, Defendant never would have been retained to transport Hitec freight." Id. at 13.

As for the defendant's Rule 59(e) argument, the plaintiff argues that the motion is untimely. Id. at 9-10. It argues that the motion is untimely even if the court construes it as a motion under Rule 60(b)(2) or (b)(3). Id. at 10.

3. *The Defendant's Reply (Dkt. No. 48)*

The defendant says that it was "prompt and diligent" in filing the motion to reconsider and that the court has discretion to grant it. Dkt. No. 48 at 2. It asserts that the plaintiff's argument that Hillier acted at the direction of Thomas Cook is "further new information." Id. It argues that the plaintiff has not supplemented its answers to discovery to identify communications between Thomas Cook and Hillier. Id. at 3. Thus, it argues, there was a "lack of communication" between Thomas Cook in Wisconsin and the defendant or Hillier in Canada. Id. at 4. Finally, the defendant asserts that the plaintiff's argument that the defendant sent invoices to, and the plaintiff sent payments from, Wisconsin was not the basis of this court's decision to deny the motion to dismiss. Id.

C. Legal Standard

"[T]he Federal Rules of Civil Procedure do not expressly recognize a 'motion to reconsider.'" United States v. Lewis, No. 17-cr-191-pp, 2019 WL 3068310, at *1 (E.D. Wis. July 11, 2019) (quoting United States v. Roth, No. 10 Misc. 001, 2010 WL 1541343, at 2 (E.D. Wis. April 19, 2010). Parties often use

this catch-all phrase to refer to motions to revise non-final orders under Federal Rule of Civil Procedure 54(b), motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e) or motions for relief from a judgment or order under Federal Rule of Civil Procedure 60.

Rule 54(b) says that any order that does not adjudicate all the claims and liabilities of all the parties "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b); Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [new trial] motion").

Rule 59(e) allows a court to alter or amend a judgement if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995) (citing Charlese v. Daley, 799 F.2d 343, 348 (7th Cir. 1986)). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." Harrington v. City of Chi., 433 F.3d 542, 546 (7th Cir. 2006) (citing Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). A party moving to alter or amend a judgment under Rule 59(e) must "clearly establish" one of those two grounds for relief. Id. (citing Romo v. Gulf

Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)). "Rule 59(e) 'does not provide a vehicle for a party to undo its own procedural failures . . . .'" Id. (quoting Bordelon, 233 F.3d at 529).

A party may ask a court to grant relief from a final judgment or order under Rule 60(b) within a "reasonable amount of time" after the court issues the final judgment or order, but if the moving party seeks relief under Rule 60(b)(1), (b)(2) or (b)(3), it must make its motion "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Rule 60(b) describes several bases for such relief, including

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." Harrington, 433 F.3d at 546 (quoting Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 837 (7th Cir. 2005)).

D. Discussion

1. *Timeliness of the Motion*

The court has not entered judgment, and even if the court's order denying the motion to dismiss had constituted a judgment, the defendant did not file its motion within twenty-eight days of the date the court issued the order. The defendant's motion is not timely under Rule 59(e).

Rule 60(b)(2) allows a court to grant relief from an order if the moving party identifies newly discovered evidence that could not, with the exercise of due diligence, have been discovered in time to file a Rule 59(e) motion. The defendant argues that the evidence from Hillier's deposition is newly discovered and could not have been discovered sooner. Even if the court agrees, the defendant did not file its motion within one year of the date the court issued its order on the motion to dismiss. The defendant's motion is not timely under Rule 60(b)(2).

That leaves Rule 54(b). The court may revise an order under Rule 54(b) at any time before entry of a judgment adjudicating all the claims against all the parties. Rule 54(b) allows a district court to reconsider and revise interlocutory orders at any time prior to final judgment. See Hicks v. Evergreen Living & Rehab Center, LLC, No. 20-cv-04032, 2021 WL 4440316, * 3 (N.D. Ill. Aug. 16, 2021). The court has not entered judgment adjudicating *any* claims against *any* parties, so the defendant's motion is timely under Rule 54(b), and the court will treat the motion as a Rule 54(b) motion to revise its July 23, 2020 order denying the motion to dismiss.

2. *Rule 54(b) Analysis*

The Seventh Circuit has not articulated a standard for revising a non-final order under Rule 54(b). The Seventh Circuit has said, however, that one basis for a motion to reconsider a previous ruling would be "a controlling or significant change in the law or facts since the submission of the issue to the Court." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). The court cautioned, however, that "[s]uch problems rarely arise and the motion to reconsider should be equally rare." Id.

The defendant's motion to reconsider is not clear regarding which prong of the court's decision on the motion to dismiss it means to challenge. The first page of the motion asserts that because Hillier—whom the defendant argues was the sole individual who had a relationship with the defendant—was a Canadian citizen residing in Canada, the court was "misled as to factors relevant to its decision as to the forum non conveniens analysis." Dkt. No. 44 at 1. On page 6 of the motion, however the defendant argues that this evidence "weighs in favor . . . of dismissal of this action for lack of personal jurisdiction." Id. at 6. Because the motion is not clear, the court will address both prongs of its analysis.

a. Personal Jurisdiction

Wisconsin's long-arm statute confers jurisdiction where there is injury to a person in Wisconsin arising out of "an act or omission outside [Wisconsin] by

the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within [Wisconsin] by or on behalf of the defendant." Wis. Stat. §801.05(4)(a). As the court explained when it denied the motion to dismiss, the statute provides that personal jurisdiction may be established when either solicitation or service activities are carried out within this state *on behalf of* the defendant. Dkt. No. 18 at 28:26. The court focused on the language of the BCA—signed by the defendant—making a Wisconsin domestic LLC (the plaintiff) the defendant's agent "for the solicitation and dispatch of merchandise available for transportation by motor vehicle, dkt. no. 1-1 at 3, and "for the collection of charges," id. at 4. (The court concedes that the BCA did not require the services to be performed in Wisconsin.)

The defendant now points to portions of Hillier's deposition suggesting that Hillier was the one who did the "soliciting" (although he testified that he did not reach out to customers; they reached out to him) and that he did it from Canada where he lives. But Thomas Cook, the owner/president of the plaintiff, filed a supplemental declaration in opposition to the motion for reconsideration clarifying that Hillier was an independent contractor and not an officer or employee of the plaintiff. Dkt. No. 47-1 at ¶5. Hillier operated as an agent for the plaintiff with respect to his logistics coordinator duties and refered loads to the plaintiff; the plaintiff collected revenue and provided commissions to Hillier. Id. at ¶6. Hillier referred to the plaintiff Hitec's need to ship freight and the plaintiff, unable to handle the majority of the transportation under its motor carrier authority, asked Hillier to help find a

carrier; Hillier suggested the defendant. Id. at ¶¶13-15. But Thomas Cook, in Wisconsin, made the decision to assign the loads to the defendant, calculated and determined the price and the substantive terms, dictated the terms to Hillier, reviewed the load confirmation document Hillier helped draft, put it on the plaintiff's letterhead and sent it to Hillier to be forwarded to the defendant. Id. at ¶¶20, 24. The invoices for payment were sent by the defendant to the plaintiff's office in Delavan, Wisconsin. Id. at ¶26. The plaintiff obtained payments from the customer and sent those payments to the defendant from Delavan, Wisconsin. Id. at ¶27.

The defendant's argument ignores the fact that the defendant voluntarily signed a broker-carrier agreement with *the plaintiff*, not Hillier. That contract designed *the plaintiff*, not Hillier, as the defendant's agent for solicitation and services. *The plaintiff* executed that agency from Wisconsin. The defendant cannot use the fact that Hillier—an agent of the plaintiff—is a citizen of and lives in Canada to get around the fact that the BCA makes *the plaintiff*—a resident of Delavan, Wisconsin—the defendant's agent for solicitation and services. Even if Hillier is the person who identified the defendant as an entity that could make the Hitec shipments, Hillier's citizenship and place of residence do not alter the fact that the defendant deliberately entered into a contract with a Wisconsin LLC (the plaintiff), sent that contract to Wisconsin for review and, through that contract, made a Wisconsin LLC (the plaintiff) its agent for solicitation and services.

b. Forum Non Conveniens

With respect to the *forum non conveniens* analysis, a court may exercise its discretion and dismiss a case when "(1) 'an alternative forum has jurisdiction to hear [the] case' and (2) trial in the chosen forum would prove, disproportionate to the plaintiff's convenience, oppressive and vexatious to the defendant; or 'the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Instituto Mexicano del Seguor Social v. Zimmer Biomet Holdings, Inc., 29 F.4th 351, 357 (7th Cir. 2022) (quoting Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007)). "The latter half of the analysis requires the district court to balance the public and private interest factors of the alternative forum." Id. (citing Fischer v. Magyar Allamvasutak Zrt., 777 F.3d 847, 868 (7th Cir. 2014)).

The defendant's motion to reconsider does not mention an alternative forum with jurisdiction to hear the case, although as noted above, the court conceded at the hearing that Canada might be such a forum (while noting that the plaintiff's damages would be limited under Canadian law and questioning whether a Canadian court would have jurisdiction over some witnesses). Dkt. No. 19 at 1. As to the weighing of the public and private interests of the alternate forum, the court explained at the hearing that the private interests did not shift the balance in either direction. Dtk. No. 18 at 49:11. The defendant does not explain how the fact that Hillier is a citizen of and lives in Canada would shift the balance of private interests to Canada. It might have

argued that Hillier's citizenship would make access to him easier in Canada—it did not. It might have argued that it would be easier to serve Hillier with subpoenas (or their equivalent) in Canada—it did not.

The court found at the hearing that the balance of *public* interests weighed in favor of Wisconsin. Relevant public interest factors include "(1) the 'administrative difficulties stemming from court congestion'; (2) the 'local interest in having localized disputes decided at home'; (3) the 'interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action'; (4) the 'avoidance of unnecessary problems in conflicts of laws or in the application of foreign law'; and (5) the 'unfairness of burdening citizens in an unrelated forum with jury duty.'" Zimmer Biomet, 29 F.4th at 360 (quoting Fischer, 777 F.3d at 868). Applying those factors, the court considered that the bills of lading are governed by Canadian law but noted that the plaintiff had sued for a breach of the BCA, which references federal law, and had alleged a violation of the Carmack Amendment. The court concluded that if there were a choice of law question, it was not clear that the Canadian court would be in a better position than this one to make that call. Dkt. No. 18 at 50:00-50:36. The court noted that Wisconsin has a strong local interest in a breach of contract claim brought by a Wisconsin business. Id. at 50:44. It concluded that it would not unfairly burden Wisconsin citizens to serve on jury duty in a case involving a Wisconsin contract. Id. at 50:55. Finally, the court indicated that it had reviewed the statistics for the Superior Court of Ontario and could not say that the congestion of the courts weighs heavily in favor of

either forum. Id. at 52:35. The court could not find that the balance of interests clearly favored the defendant or that the defendant had satisfied its heavy burden under the doctrine of *forum non conveniens*.

Nothing about the "newly discovered" evidence that the defendant cites in the motion to reconsider changes this analysis. The fact that Brian Hillier is a citizen of Canada and lives in Canada has little to do with court congestion in either forum, with the interests of either forum in having localized disputes resolved at home, the comfort level of this court with the law that will govern the case, any conflict of law or application of foreign law by the Canadian forum or the burden of jury duty.

The defendant did not satisfy its burden on its motion to dismiss. The defendant insists that the court based its decision on "solicitation services." Dkt. No. 48 at 4. That is a narrow reading of the court's decision. The court considered the defendant's choice to sign the BCA and to designate the plaintiff as its agent for solicitation and services. The "new evidence" regarding Hillier's role and his citizenship does not change that analysis.

E. Conclusion

The court **DENIES** the defendant's motion for reconsideration of the defendant's motion to dismiss. Dkt. No. 44.

Dated in Milwaukee, Wisconsin this 28th day of July, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**