UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COOK LOGISTICS, LLC,

        Plaintiff,

  v.

EQUIPMENT EXPRESS, INC.,

        Defendant.

Case No. 19-cv-1620-pp

---

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 70) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 53)**

---

On November 4, 2019, the plaintiff filed a complaint alleging breach of contract and liability under the Carmack Amendment for damage its cargo allegedly suffered while the defendant transported it from Canada to Washington. Dkt. No. 1. On July 15, 2022, the defendant moved for summary judgment on both claims. Dkt. No. 53. After briefing on the motion for summary judgment had concluded, the plaintiff filed a motion to strike an addendum to the defendant's expert report (filed with the defendant's reply brief) on the ground that the addendum was not timely disclosed. Dkt. No. 70.

The court will grant the plaintiff's motion to strike, grant the defendant's motion for summary judgment as to Count I of the complaint and deny the motion as to Count II.

**I.    Background**

The following facts are undisputed unless otherwise noted.

    A.    <u>The Shipment</u>

The plaintiff is a transportation broker and motor carrier. Dkt. No. 69 at 12, ¶¶1–2. The defendant is a motor carrier. <u>Id.</u> at ¶3. In February 2019, the

1

plaintiff hired the defendant to transport five loads on behalf of Hitec Power Protection, Inc., including two power generation modules (referred to by the parties as "gensets"), from Hamilton, Province of Ontario, Canada to Redmond, Washington. Dkt. No. 64 at 2, ¶1. The gensets each were forty-seven feet long, ten feet wide and twelve feet high, and weighed 90,000 pounds. Id. at ¶3.

Hitec inspected the gensets before shipping. Dkt. No. 69 at 14, ¶24. Hitec stressed the importance of protecting the shipment to make sure it arrived in proper condition and "pretty much" required the gensets to be shrink-wrapped. Id. at 15, ¶¶28–29. The parties discussed whether to use tarps in addition to shrink-wrap, but the plaintiff ultimately decided not to use tarps. Id. at ¶30.

The plaintiff contracted with Mobility Shrink Wrap LTD to have the shipments shrink-wrapped prior to transport, in order to protect them from the elements during transport. Dkt. No. 64 at 3, ¶4. The defendant contends that the shrink-wrap was "guaranteed" by Mobility not to fail during transit. Id. at ¶6. The plaintiff disputes this, arguing that the plaintiff's logistics coordinator testified only that someone from the shrink wrap company told him that "the wrap was sufficient and tarp was not required." Id. (quoting Dkt. No. 56-2 at 9 (Tr. p. 108:2–5)).

B. Transportation

The gensets were shrink-wrapped and loaded onto the defendant's trucks beginning on February 13, 2019. Dkt. No. 69 at 25, ¶53. The defendant's trucks departed the Ontario facility two days later. Id. at ¶54. Due to a February 18, 2019 national holiday in Canada, from February 15 to 18, 2019, the defendant parked the trucks carrying the two genset loads at a roadside weigh station in Parry Sound, Ontario. Id. at 25-26, ¶¶55–56; 27, ¶¶61–62.

2

During transportation, the shrink-wrap on both gensets tore open. Dkt. No. 64 at 4, ¶8. On February 19, 2019, the defendant's driver contacted the defendant to let the defendant know that the shrink wrap on his load had split. Dkt. No. 69 at 31, ¶72. The defendant informed the plaintiff about the shrink-wrap issue; the plaintiff contacted the driver directly and instructed him to tarp the load to protect the components. Id. at 32, ¶75. The plaintiff also instructed the driver to have the other genset load tarped. Id. at ¶76. The defendant argues that this is irrelevant because the damage already had been done when the shrink-wrap failed. Id. at ¶¶75–76. Later, the defendant informed the plaintiff that the driver of the other genset load reported that the shrink-wrap on his load also had split as of February 22, 2019. Id. at ¶78. When the genset loads arrived at their destination on March 1 and March 4, 2019, the gensets on the backs of the trucks were partially exposed to the elements. Id. at 29, ¶68; 33, ¶79.

Trucks carrying the other equipment loads (two of which were driven by drivers directly contracted by the plaintiff, not the defendant) traveled through the United States rather than Canada and arrived at their destination on or before the scheduled delivery date of February 25, 2019. Id. at 27-28, ¶¶63–64; 29, ¶67. One of those loads transported by the plaintiff's driver also had issues with its shrink-wrap. Id. at ¶67.

  C. <u>Damages</u>

Following the arrival of all the loads in Washington, Hitec had the loads inspected, finding that the GDP electrical panels on the gensets showed signs of water infiltration and corrosion. Id. at ¶84. The GDPs were declared a complete loss by the original manufacturer. Id. at 34, ¶85.

3

The gensets suffered damage, at least in part, due to the torn shrink-wrap. Dkt. No. 64 at 4-5, ¶9. The defendant's expert witness, Lawrence Dull, concluded that the "damaged equipment in this case was caused by the failure of the shrink wrap used to encapsulate the equipment" and that "the failure of the shrink wrap was predictable." Dkt. No. 69 at 36-37, ¶92 (quoting Dkt. No. 56-11 at 6). Dull testified that the shrink-wrap failed due to stress concentration points, less than adequately padded corners, unsupported areas and temperatures. Dkt. No. 64 at 5-6, ¶11. Dull did not have any expert opinions regarding the actions of any of the parties following the failure of the shrink wrap. Dkt. No. 69 at 38, ¶98. Dull did not conduct any investigation as to whether transporting the equipment through the United States rather than Canada would have affected the shrink wrap. Id. at ¶100. But the defendant argues that the length of the route was immaterial because Dull stated that "the residence time (that is, the time that the film spends at a particular temperature) at lower temperatures is not important. Films will equilibrate to the ambient temperature in minutes." Id. (quoting Dkt. No. 67-3).

William Cisler, VP of Engineering of Hitec, testified that if the shrink wrapping had been properly done, the gensets would have been protected and tarps would not have been needed. Dkt. No. 64 at 5, ¶10. But Cisler also testified that he could not say whether the shrink wrap was properly applied at the outset of shipping. Id. (quoting Dkt. No. 56-6 at 7 (Tr. p. 78:16–21)).

Hitec assigned to the plaintiff its right to any claims relating to the shipment of gensets. Id. at 6, ¶13. The plaintiff now alleges that the defendant is liable for the costs associated with repairing and replacing the gensets. Id. at ¶12. But the parties dispute the total amount of those costs. The plaintiff alleged in the complaint that Hitec "incurred in excess of $468,306.80 to repair

4

and replace the damaged components." Id. at ¶14 (quoting Dkt. No. 1 at ¶¶20, 27). On September 26, 2019, a Hitec representative provided the plaintiff with a spreadsheet that calculated its total damages as $458,306.80. Id. at 8, ¶¶16–17. The plaintiff now asserts that Hitec expended at least $309,410.37 associated with the repair and/or replacement of the damaged units. Dkt. No. 69 at 35, ¶86. The defendant contends that Cisler testified to a series of itemized expenses that total $276,833.98. Id.

Hitec paid the plaintiff $165,000 for freight charges related to the gensets. Dkt. No. 64 at 8, ¶18. The plaintiff has not paid the defendant for transporting the Hitec loads, a cost which the defendant asserts totals $162,600 CAD. Id. at ¶19. The defendant has filed suit in Ontario to collect on those charges. Id.

## II. Motion to Strike (Dkt. No. 70)

On July 15, 2022, the defendant moved for summary judgment on all claims. Dkt. No. 53. The plaintiff filed an opposition brief on September 6, 2022. Dkt. No. 65. On September 30, 2022, the defendant filed a document titled "supplemental disclosure of witnesses pursuant to FRCP Rule 26(a)(2)." Dkt. No. 66. The defendant attached a one-page document it identified as a supplement to the opinion of its previously disclosed expert witness, Lawrence Dull. Id. at 1. The supplement, titled "Initial Report Addendum," is dated July 14, 2022. Dkt. No. 66-1. The defendant then filed a reply brief in support of its motion for summary judgment and a response to the plaintiff's additional proposed findings of fact. Dkt. Nos. 68, 69. The defendant cites the supplement once in its reply materials. Dkt. No. 69 at 38, ¶100.

The plaintiff subsequently moved to strike the supplement to Dull's report. Dkt. No. 70. The plaintiff argues that the supplement is untimely

5

because it was not produced by the deadline for expert witness disclosures set in the court's scheduling order. Id. at ¶8. The plaintiff argues that even if the report were timely, it is dated before the defendant filed its motion for summary judgment, but the defendant failed to disclose the addendum until the plaintiff already had filed its response to the motion. Id. The plaintiff argues that the defendant has presented no good cause for the delay in disclosing the addendum. Id. The plaintiff contends that the addendum is new material that is improperly raised in conjunction with a reply brief, so the court should disregard it. Id. at ¶9 (citing Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009)).

The defendant responds that it is entitled to rely on the addendum because the plaintiff's opposition brief raised a new argument that its expert had not anticipated. Dkt. No. 71 at 2. According to the defendant, it sought the supplement to address the plaintiff's argument that the shrink wrap on the gensets was damaged due to the length of time they were in transport at low temperatures. Id. at 2–3. The defendant argues that Fed. R. Civ. P. 56 does not require that affidavits in support of summary judgment motions be produced in advance. Id. at 3. The defendant contends that because the addendum responds to an argument made by the plaintiff, it is not raising a new argument in a reply brief, so Narducci is inapplicable. Id. The defendant argues that the addendum only elaborates on Dull's prior opinion, which stated that low temperatures affected the integrity of the shrink-wrap but did not clearly state whether the time under temperature was significant. Id. at 4. The defendant argues that there is no prejudice to the plaintiff because the plaintiff deposed Dull and had the opportunity to question him about all aspects of his opinion. Id.

The plaintiff replies that the defendant's argument is disingenuous because the addendum is dated before the plaintiff filed its opposition brief. Dkt. No. 74 at 2. The plaintiff contends that it is impossible that the addendum was intended to respond to an argument that it had not yet made. Id. The plaintiff contends that the defendant provided no explanation for its failure to disclose the addendum earlier, so the court should disregard it. Id. at 3.

Federal Rule of Civil Procedure 26(a)(2)(B) states that an expert report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The proffering party must disclose the expert's report "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 37(c) provides a mechanism to enforce these requirements: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanction under Rule 37(c) "is 'automatic and mandatory' unless the offending party can establish 'that its violation of Rule 26(a)(2) was either [substantially] justified or harmless.'" Ciomber v. Cooperative Plus, Inc., 527 F.3d 635, 641 (7th Cir. 2008) (quoting Keach v. U.S. Trust Co., 419 F.3d 626, 639 (7th Cir. 2005)). In assessing harmlessness, the court considers "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003).

The court set a deadline of June 1, 2022 for the defendant to disclose its expert witnesses. Dkt. No. 52. The defendant did not disclose the addendum to

7

Dull's report until September 30, 2022. The defendant's argument that the addendum only elaborates on Dull's existing opinion is not persuasive. Dull's original report states throughout that low temperatures affect the strength of shrink wrap. See Dkt. No. 56-11. It says nothing about whether the duration of time the shrink wrap spends at low temperatures exacerbates that effect. But the addendum states that the time that the shrink wrap spends at lower temperatures is "not important." Dkt. No. 66-1. That is a new opinion, not an elaboration.

The addendum is untimely, so the court must exclude it unless its late disclosure is substantially justified or harmless. The defendant argues that it obtained the addendum to respond to a new argument the plaintiff raised in its opposition to the summary judgment motion, but that position is belied by the fact that the addendum is dated July 14, 2022—almost two months before the plaintiff filed its opposition brief. Withholding the addendum until reply smells of bad faith or (at minimum) willfulness on the defendant's part. The plaintiff suffered prejudice because it was not able to respond to the addendum, which would have allowed the defendant have the last word on the issue. The defendant has not shown that its failure to disclose the addendum is substantially justified or harmless.

The court will grant the plaintiff's motion to strike. The court will not consider the addendum when ruling on the defendant's motion for summary judgment.

### III. Motion for Summary Judgment (Dkt. No. 53)

#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

9

B. <u>Shipper Defense</u>

The defendant argues that under the Carmack Amendment, it is not liable for damage to the gensets because the damage was caused by Hitec's actions. Dkt. No. 54 at 9. The defendant asserts that Hitec hired the plaintiff to ship the gensets, and that the plaintiff in turn contracted with Mobility to shrink-wrap the gensets for transportation. <u>Id.</u> The defendant argues that a carrier is not responsible for damage caused by an act of the shipper. <u>Id.</u> at 10. It contends that the Seventh Circuit recognizes this "shipper defense" to the Carmack Amendment. <u>Id.</u> at 10–11 (citing <u>Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys.</u>, 325 F.3d 924, 930 (7th Cir. 2003)). Based on this defense, the defendant argues that the plaintiff, as the shipper and the party responsible for shrink-wrapping the gensets, is responsible for the damage to the gensets that occurred because of the shrink-wrap's failure. <u>Id.</u> at 11.

The plaintiff responds that the defendant cannot assert the shipper defense because the defendant has not established that it was not negligent in transporting the cargo. Dkt. No. 65 at 10. The plaintiff argues that the burden of proof is on the defendant to show it was not negligent *and* that the damage to the cargo was caused by the shipper's actions. <u>Id.</u> at 11 (quoting <u>Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.</u>, 211 F.3d 367, 370–71 (7th Cir. 2000)). The plaintiff says that the defendant asserts in a conclusory manner that the failure of the shrink-wrap caused the damage without showing that the defendant acted with reasonable care during the transportation. <u>Id.</u> at 12. The plaintiff argues that a reasonable jury could find that the defendant's decision to transport the loads on a longer route through Canada—including leaving the cargo unattended for three days in cold weather—could have caused or contributed to the failure of the shrink-wrap. <u>Id.</u> at 12–13. The plaintiff also

10

maintains that the defendant's actions after the shrink-wrap split may have contributed to further damage because the defendant did not re-wrap or properly tarp the gensets at that time. Id. at 13.

The plaintiff asserts that the defendant's expert testimony from Lawrence Dull should be given less weight than the testimony of Gerry VanDyke, one of Mobility's employees who participated in the actual shrink-wrapping of the loads. Id. at 13–14. The plaintiff argues that Dull relied on photographs to determine whether the shrink wrap was insufficient and did not offer expert testimony regarding whether the longer route through Canada contributed to damage. Id. at 14. The plaintiff contends that VanDyke testified that the loads were properly wrapped when they left the facility and that if there was inadequate padding on the loads, the shrink-wrap would have failed within "minutes" of leaving the facility rather than remaining intact for three days. Id. at 15. The plaintiff asserts that out of the seven loads shipped, only the two loads that took the Canada route and sat unattended for three days suffered damage to their shrink-wrap, suggesting that the failure of the shrink-wrap was due to some factor other than the shrink-wrapping itself. Id. The plaintiff argues that "myriad questions of fact exist as to what actually caused the shrink-wrap to become compromised," making summary judgment inappropriate. Id. at 18.

The defendant replies that the plaintiff exclusively controlled the shrink-wrap work, so the defendant could not be responsible for the failure of the shrink-wrap. Dkt. No. 68 at 3–4. The defendant argues that placing tarps over the shrink-wrapped loads could have damaged the shrink-wrap and that in any event, once the shrink-wrap was damaged and the cargo was exposed to the elements, tarping would not have prevented the damage to the cargo. Id. at 4-5.

11

The defendant argues that the plaintiff has provided no evidence that "something happened" during the delay in shipping that would have caused the damage to the shrink-wrap. Id. at 5–6. It contends that the plaintiff cannot create a triable issue of fact absent supporting evidence in the record. Id. at 6. It argues that the plaintiff has presented no expert testimony to explain why the delay in shipping could have caused damage. Id. at 7. The defendant also contends that one of the loads that traveled through the United States had issues with its shrink-wrap, suggesting that the Canada route was not the problem. Id. at 7–8.

Under the Carmack Amendment, the plaintiff must establish "(1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages." Allied Tube, 211 F.3d at 369. If the plaintiff makes that showing, the burden then shifts to the defendant "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Id. "The excepted causes are 'acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods.'" Am. Nat'l., 325 F.3d at 930 (quoting Allied Tube, 211 F.3d at 369–70 n.2). The defendant has not discussed the plaintiff's *prima facie* showing; its brief focuses only on the shipper defense, so the court will assume without deciding that the plaintiff has established its *prima facie* case.

The defendant must establish both the shipper defense and that it was not negligent. See id. (holding that even if the shipper's packaging contributed to the extent of the cargo damage, the carrier's failure to show that it was not negligent prevented it from rebutting the shipper's case). The defendant does not discuss the negligence prong in its brief, so it necessarily has failed to

12

rebut the plaintiff's *prima facie* case under the Carmack Amendment. Although it argues that the plaintiff failed to provide an alternative explanation for the damage, that is not the plaintiff's burden. It is the *defendant's* burden to establish that it is free from negligence, and it has not done so. The facts show that the defendant chose to leave the shrink-wrapped gensets unattended for three days at a roadside weigh station, and that after those three days, the shrink-wrap on one of those loads had split open. Based on those facts, a reasonable jury could find that the defendant's decision to leave the loads unattended may have been negligent. The court will deny summary judgment for the defendant on Count II of the complaint.

### C. Preemption

The defendant argues that the Carmack Amendment preempts any state law contract claims for damage to goods during transportation. Dkt. No. 54 at 11 (quoting Gordon v. United Van Lines, 130 F.3d 282, 284 (7th Cir. 1997)). Because the plaintiff's claim is for damage sustained during transportation, the defendant argues that the breach of contract claim is preempted. Id.

The plaintiff argues that its contract claim is not preempted because it brought that claim in its capacity as a broker, not as the assignee of the shipper, Hitec. Dkt. No. 65 at 19. The plaintiff contends that the Carmack Amendment allows recovery only to "the person entitled to recover under the receipt or bill of lading." Id. (quoting 49 U.S.C. §14706(a)(1)). The plaintiff asserts that it never was named in the bill of lading as a party to the transportation, so it can recover on its own behalf under the parties' separate contract. Id. at 19–20 (citing Exel, Inc. v. Southern Refrigerated Transp., Inc., 2012 U.S. Dist. LEXIS 104740 (S.D. Ohio, July 27, 2012)).

13

The defendant replies that the Carmack Amendment preempts such claims unless there are injuries separate and apart from those resulting from the damage to the cargo. Dkt. No. 68 at 9. Because the plaintiff is claiming the same damages under the contract and the Carmack Amendment, the defendant contends that its breach of contract claim is not separate and distinct from the Carmack Amendment claim. Id. at 9–10.

"The Carmack Amendment generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods," including breach of contract claims. REI Transp., Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697 (7th Cir. 2008) (citing Adams Express Co. v. Croninger, 226 U.S. 491, 505 (1913)); Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997) ("State law claims for losses or damage to the cargo, however, whether described under a contract theory or a tort theory, are preempted by the Carmack Amendment."). But a shipper can recover for "certain kinds of separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods." Gordon, 130 F.3d at 289. Those "separate and distinct" claims include intentional infliction of emotional distress related to the shipping, see id., deceptive trade practices, N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc., 89 F.3d 452, 458 (7th Cir. 1996), or non-payment under a contract, REI, 519 F.3d at 698.

The plaintiff's breach of contract claim alleges that the defendant is liable for "loss or damage to any property transported under this Contract." Dkt. No. 1 at ¶14. It seeks damages "for the amounts associated with the repair and replacement of the damaged cargo." Id. at ¶20. That claim is, by its terms, a claim for loss or damage to cargo. Seventh Circuit precedent uniformly holds that such claims are preempted by the Carmack Amendment. REI, 519 F.3d at

14

697–98; Gordon, 130 F.3d at 289; N. Am. Van Lines, 89 F.3d at 457. The plaintiff's argument that its status as a broker means that the contract claim is not preempted rests on an out-of-circuit district court case that is not binding on this court and is inconsistent with Seventh Circuit precedent. The Carmack Amendment is designed to "provide a uniform cause of action *against carriers*." REI, 519 F.3d at 698 (emphasis added). The plaintiff may be a broker, but this is a cause of action against a carrier. The plaintiff's breach of contract claim is preempted by the Carmack Amendment, so the court will grant summary judgment for the defendant on Count I of the complaint.

    D.    Damages

The defendant argues that under the Carmack Amendment, the plaintiff did not suffer any damages. Dkt. No. 54 at 11. It argues that because the Carmack Amendment preempts the plaintiff's breach of contract claim, the plaintiff's recovery is limited to its actual damages. Id. at 12 (citing Am. Nat'l, 325 F.3d at 931. According to the defendant, a carrier is liable to a shipper for the market value of the cargo at the destination (taking into account the damage to the cargo), less the amount of the freight charges due for their transportation. Id. (quoting The Oneida, 128 F. 687, 692 (2d Cir. 1904)). The defendant asserts that Hitec incurred a total of $276,833.90 in repair and replacement costs for the damaged gensets. Id. The defendant argues that Hitec subtracted $288,430 from the $453,400 due to the plaintiff and paid the plaintiff $165,000 for shipping. Id. It argues that because Hitec's offset ($288,430) exceeds the cost of repairs ($276,833.90), the plaintiff has no claim for further damages on Hitec's behalf. Id. at 12–13.

The plaintiff responds that its contract claim is not preempted and so its recovery is not limited to actual damages. Dkt. No. 65 at 20. The plaintiff

15

argues that under the contract, it is entitled to the replacement cost of the damaged loads. Id. It asserts that Hitec would have paid it $453,400 for shipping the gensets if they had arrived undamaged. Id. at 21. The plaintiff asserts that instead, Hitec paid it only $165,000. Id. The plaintiff asserts that because Hitec calculated its initial repair/replacement costs at $468,306.80, which was "approximately equal" to the remaining amount due to the plaintiff, Hitec assigned the plaintiff its right to collect damages from the defendant. Id. The plaintiff asserts that it is owed $288,400 from its invoice to Hitec and that at least $309,410.37 of Hitec's damages remain unpaid. Id. at 22.

The court already has rejected the plaintiff's argument that the breach of contract claim is not preempted. The plaintiff may recover only damages allowed under the Carmack Amendment. The parties vigorously dispute the amount of damages that Hitec incurred replacing or repairing the damaged cargo. The resolution of that issue is for the jury at trial. The court will not grant summary judgment for the defendant based on a lack of damages under the Carmack Amendment.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion to strike. Dkt. No. 70.

The court **GRANTS IN PART** and **DENIES IN PART** the defendant's motion for summary judgment. Dkt. No. 53.

The court **GRANTS** summary judgment in favor of the defendant on Count I of the complaint and **ORDERS** that Count I is **DISMISSED WITH PREJUDICE**.

The court **DENIES** the defendant's motion for summary judgment as to Count II of the complaint.

The court will issue a separate order setting a status conference to discuss the next steps in the case.

Dated in Milwaukee, Wisconsin this 8th day of July, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**